IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARLA ORNDORF,                          )
                                        )
        Plaintiff,                      )
                v.                      )       Civil No. 3:22-cv-00012
                                        )       Judge Stephanie Haines
SHAWN FYE, AUSTIN MILLER,               )
DOUGLAS CLARK, CLEARFIELD               )
BOROUGH, and LAWRENCE                   )
TOWNSHIP,                               )
                                        )
        Defendants.                     )

## OPINION

Carla Orndorf ("Orndorf") files this civil action against Corporal Shawn Fye ("Fye") and Officer Austin Miller ("Miller") both police officers with the Clearfield Borough Police Department; Douglas Clark ("Clark") a police officer and Chief of Police with the Lawrence Township Police Department; Clearfield Borough ("Clearfield"); and Lawrence Township ("Lawrence"). Orndorf asserts her civil rights were violated under 42 U.S.C. § 1983 when Fye, Miller, and Clark entered her home to effectuate an arrest of her then boyfriend Michael Bloom ("Bloom") (Complaint ECF No. 1). Along with her civil rights claims, Orndorf makes claims of malicious prosecution, intentional infliction of emotional distress, and failure to train.

Presently, before the Court is a Rule 12(b)(6) Motion to Dismiss (ECF No. 13) and a Brief in Support (ECF No. 14) filed by Fye, Miller, and Clearfield (collectively " Moving Defendants").[1] In response Orndorf filed a Brief in Opposition to the Motion (ECF No. 16) and Defendants subsequently filed a Reply (ECF No. 17). The matter is ripe for disposition.

---

[1] Defendants Clark and Lawrence filed an Answer and Affirmative Defenses (ECF No. 12) to Orndorf's Complaint.

## I. Factual Background

As an initial matter the Court must address Orndorf's objections to the exhibits attached to the Moving Defendants' Motion to Dismiss. Orndorf objects to the Criminal Complaint and the preliminary hearing transcript from the state criminal court proceedings (Moving Defendants' Exhibits A and B, ECF Nos. 14-1, 14-2),[2] being part of the record for consideration for the Motion to Dismiss. It is Orndorf's contention that the Court may only consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). ECF No. 16, p. 7. If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under [Federal Rule of Civil Procedure] 56." FED. R. CIV. P. 12(d). Yet the court in *Pension* also held "that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* The public must have "unqualified access to all of the documents at issue." *Id.* at 1197. Moving Defendants state that the exhibits provided with their Brief in Support of the Motion to Dismiss are matters of public record and the contents of these records are at issue. The Court agrees with Moving Defendants.

Exhibit A to the Brief in Support of the Motion to Dismiss, the signed version of the Criminal Complaint at ECF No. 17-1, is an authentic public document and Orndorf's claims for malicious prosecution are undoubtedly based on this document. Therefore, the Court may rely on this document in its evaluation of the Motion the Dismiss. *See Dean v. Copozza*, No. CIV.A. 13-41, 2013 WL 1787804, at *1 (W.D. Pa. Apr. 10, 2013) ("Pennsylvania's Unified Judicial System

---

[2] Orndorf's objection to the Moving Defendants' Exhibit A, Criminal Complaint, was that it had no filing date, docket number, or OTN/LivesScan Number. Moving Defendants in their Reply provided another copy of the Criminal Complaint that includes the missing information (ECF No. 17-1).

provides online access to the docket sheet for criminal cases, and this court may take judicial notice of those dockets."); *Zedonis v. Lynch,* 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("We find that we may rely on these documents for a limited purpose without construing Defendants' motion to dismiss as one for summary judgment. ... [J]udicial opinions and docket sheets are public records, of which this court may take judicial notice in deciding a motion to dismiss."). "Further, because the police criminal complaint and affidavit of probable cause (Doc. 9–2) outlining Plaintiff's 2005 DUI conviction are indisputably authentic documents upon which Plaintiff's complaint is based, we may consider these exhibits for a limited purpose." *Id.*; *see also Boyden v. Twp. of Upper Darby*, 5 F.Supp.3d 731, 734 (E.D. Pa. 2014) (relying on police criminal complaint and affidavit of probable cause in deciding motion to dismiss).

Exhibit B to Moving Defendants' Brief in Support of their Motion to Dismiss is a transcript of a pretrial hearing that took place at Clearfield County Courthouse as part of the judicial record in Orndorf's criminal proceedings. ECF No. 14-2. It contains sworn testimony of Fye, Miller, and Clark regarding the events of the night at issue. The Court considers this transcript a public record available for consideration in this Motion to Dismiss. "Public records include criminal case dispositions, letter decisions of government agencies, published reports of administrative bodies, judicial opinions, and **hearing transcripts**." *In re Mechanicsburg Fitness, Inc.,* 596 B.R. 24, 29 (Bankr. M.D. Pa. 2019) (emphasis added). Judicial proceedings constitute public records and courts may take judicial notice of another court's opinions. *See Southern Cross Overseas Agencies v. Wah Kwong Shipping Grp. Ltd.,* 181 F.3d 410, 426 (3d Cir.1999). The testimony of the hearing in the criminal case is relevant to the issues in this case and it is of no consequence that Orndorf considers the testimony slanted. Both Exhibits A and B are properly considered part of the record that the Court may consider in its evaluation of the Moving Defendants' Motion to Dismiss.

Having established the record for consideration, the Court will continue with its recitation of the facts. On the evening of February 23, 2020, police were called to Orndorf's residence located in Clearfield, Pennsylvania; neighbors had reported a domestic dispute. ECF No. 1, ¶¶ 12,14. Fye and Miller were dispatched to the scene in different marked police vehicles. *Id.* ¶ 16. As Fye approached the scene, he heard a man yelling and saw Orndorf and Bloom standing inside the enclosed front porch of Orndorf's residence. *Id.* ¶ 17. When Fye pulled in, Orndorf left the porch and approached Fye to tell him that everything was fine. *Id.* ¶ 19. At that time, Bloom left the front porch to enter the house. *Id.* After speaking with Orndorf, Fye requested to speak with Bloom to confirm all was okay and Orndorf and Fye entered the residence to find that Bloom had left. *Id.* ¶ 20. Fye then left the residence asking Orndorf to call him if Bloom returned. *Id.* ¶ 21.

An inquiry into records led Fye to discover an active arrest warrant for Bloom.[3] The arrest warrant was issued for unpaid fines and costs with a purge amount of $600. *Id.* ¶ 37; ECF No. 10. Fye and Miller proceeded to drive around the neighborhood for about an hour looking for Bloom. ECF Nos. 1, ¶¶ 22, 24; 14, p. 3. When Fye drove past Orndorf's residence he saw her on the porch again and yelled to her that there was an arrest warrant out for Bloom. ECF No. 1, ¶ 25. He added that she needed to report to the police if Bloom returned to the residence or else she would be charged with harboring a fugitive. *Id.* ¶ 25.

Bloom at some point returned to Orndorf's residence and used the restroom. The officers, while cruising the neighborhood, spotted him there. *Id.* ¶ 26. Clark and Miller went to Orndorf's front door, while Fye guarded the back door. *Id.* ¶ 27. Clark and Miller knocked on the front door

---

[3] Moving Defendants provided a somewhat long criminal docket for Mr. Bloom that shows convictions for DUI, reckless endangerment, simple assault, and harassment. (ECF No. 17-2). These convictions resulted in several fines levied against Mr. Bloom.

and Orndorf answered.  *Id.* ¶ 28.  They told Orndorf that they saw Bloom in her residence and needed to gain entrance to arrest him.  *Id.* ¶ 28.  Orndorf said, "Let me go speak with him," and she closed the door leaving Clark and Miller on the porch.  *Id.* ¶ 29.  The officers knocked again on the front door and Orndorf answered again saying she needed to speak with Bloom and asked if the officers had a search warrant or an arrest warrant for Bloom.  *Id.* ¶ 30.  The officers stated they did not need a search warrant to enter her residence to arrest Bloom.  *Id.* ¶ 31.  At that point Clark put his foot in between the door and the jamb preventing Orndorf from closing the door.  *Id.* ¶ 31.  Orndorf continued to hold the door and asked for a search warrant.  *Id.* ¶ 32.  Clark and Miller threatened her with arrest and pushed their way into the house.  *Id.*  Fye entered simultaneously through the back door.  *Id.* ¶ 33.

Orndorf continued to ask to see the search or arrest warrants and Clark told her to "shut up" or she would be arrested.  *Id.* ¶ 34.  The officers proceeded to the bathroom and arrested Bloom without incident.  *Id.* ¶¶ 35-36.

Orndorf stated that on or about February 28, 2020, she was charged with:

(1) A second degree misdemeanor hindering apprehension or prosecution-harboring or concealing, 18 Pa. C.S.A. § 5105(a)(1);

(2) A second degree misdemeanor hindering apprehension or prosecution-false information to law officers, 18 Pa. C.S.A. § 5105(a)(5);

(3) A third degree misdemeanor disorderly conduct, 18 Pa. C.S.A. §5503(a)(4); and

(4) Summary disorderly conduct, 18 Pa. C.S.A. §5503(a)(4).  *Id.* ¶ 40.

The Police Criminal Complaint, however, only states two charges which include hindering apprehension or prosecution-harboring or concealing under 18 Pa.C.S. 5105(a)(1) and disorderly

conduct under 18 Pa.C.S. 5503(a)(4).  ECF No. 17-1, p. 4 (Police Criminal Complaint).  All of the charges were eventually decided in Orndorf's favor.  ECF No. 1, ¶ 43.

Orndorf seeks damages for emotional distress, loss of reputation, and attorneys' fees used to defend herself against the unjustified criminal charges filed against her.

**II.  Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the Court is not opining on whether the plaintiff will likely prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-236 (3d ed. 2004)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)).  In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower*

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.   Discussion

Orndorf asserts six claims in her Complaint. The claims asserted are (1) a Fourth Amendment unreasonable search claim against Fye, Miller, and Clark; (2) a *Monell* claim against Clearfield and Lawrence for failure to adequately train their police officers how to properly conduct searches and arrests inside a home; (3) a Section 1983 Malicious Prosecution claim against Fye for initiating criminal proceedings against Orndorf; (4) a First Amendment Retaliation claim against Fye, Miller, and Clark; (5) a state law malicious prosecution claim against Fye, Miller, and Clark; and (6) a state-law claim of Intentional Infliction of Emotional Distress (IIED) against Fye, Miller, and Clark.

The Moving Defendants argue for the dismissal of all Orndorf's claims against them stating she failed to state a claim upon which relief can be granted.  Moving Defendants state, (1) the officers had an arrest warrant for Bloom and therefore did not need a search warrant to enter the house where they knew Bloom was, and they had exigent circumstances to enter the home; (2) that a *Monell* claim fails as a matter of law because there is no underlying constitutional violation and there is no deliberate indifference; (3) probable cause existed to bring charges against Orndorf so there can be no state or federal malicious prosecution claims; (4) should the Court conclude there is any plausible civil rights claim, Fye and Miller are entitled to qualified immunity because they did not violate Orndorf's clearly established constitutional rights; and (5) the claim of IIED fails as a matter of law because probable cause existed to bring criminal charges against Orndorf.

The Court will address each issue below as it relates to the Moving Defendants.  A pervasive issue throughout the case is whether the officers had probable cause to enter Orndorf's home.  The resolution of this issue affects Orndorf's claims under the Fourth and First Amendments as well as her claims for malicious prosecution and IIED.  Put simply, if the officers had probable cause to enter Orndorf's home then their actions cannot violate Orndorf's civil rights or be perceived as malicious or as intentionally causing distress.

### A.  Fourth Amendment Claim Against Fye and Miller

Count I of the Complaint is a Section 1983 claim for an unreasonable search.[4]  Ondorf asserts that Fye and Miller without a search warrant, exigent circumstances, or consent, forcibly entered her home.  Moving Defendants counter that they told Orndorf that they had an arrest warrant for Bloom and that having the arrest warrant established probable cause for the arrest.  ECF No. 14, p. 9.  Citing to *Lange v. California*, Moving Defendants add that entrance into

---

[4] The Court notes that the Fourth Amendment claim is for a warrantless search of Orndorf's home and not a search of Bloom's person incident to his arrest.

8

Orndorf's home to arrest Bloom based on an arrest warrant does not violate the Fourth Amendment. 141 S. Ct. 2011, 2018 (2021); ECF No. 14, p. 9. However, *Lange* does not hold that an arrest warrant can stand in the place of a search warrant to enter a home to carry out an arrest. Instead, *Lange* states that officers may rely on exigent circumstances, case-by-case, to justify a warrantless entrance into the home to make an arrest. *See id.* "Our cases have generally applied the exigent-circumstances exception on a 'case-by-case basis.'" *Id.* (citing *Birchfield v. North Dakota*, 579 U.S. 438, 457 (2016)). The exception "requires a court to examine whether an emergency justified a warrantless search in each particular case." *Riley v. California*, 573 U.S. 373, 402 (2014). The Court must look into the "totality of the circumstances" to determine whether a "now or never" situation actually existed. *See Lange*, 141 S. Ct. at 2018; *see also Missouri v. McNeely*, 569 U.S. 141, 149-50 (2013).

The Court understands that the officers were called to Orndorf's home based on the complaint of a domestic disturbance. There was no report of violence, weapons, or illegal substances. When they arrived on the scene, they saw Orndorf and Bloom on Orndorf's porch arguing. When Orndorf approached the officers, Bloom walked into the home. When Fye sought to talk to Bloom he discovered Bloom had left the residence. An inquiry into police records revealed there was an arrest warrant out for Bloom for unpaid fines stemming from convictions of misdemeanor offenses. An hour later the officers found Bloom had returned to Orndorf's home and he was inside using the restroom.

"This Court has held that when a minor offense alone is involved, police officers do not usually face the kind of emergency that can justify a warrantless home entry." *Lange*, 141 S. Ct. at 2020. "[T]he gravity of the underlying offense," we reasoned, is "an important factor to be considered when determining whether any exigency exists." *Welsh v. Wisconsin*, 466 U.S. 740,

753 (1984). "[W]hen only a minor offense has been committed" (again, without any flight), there is reason to question whether a compelling law enforcement need is present; so it is "particularly appropriate" to hesitate in "finding exigent circumstances." *Id.* at 750. And we concluded: "[A]pplication of the exigent-circumstances exception in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense" is involved. *Id.* at 753. "[T]he need to pursue a misdemeanant does not trigger a categorical rule allowing home entry, even absent a law enforcement emergency. When the nature of the crime, the nature of the flight, and surrounding facts present no such exigency, officers must respect the sanctity of the home—which means that they must get a warrant." *Lange*, 141 S. Ct. at 2021–22 (2021)

The facts here do not provide a description of exigent circumstances. The parties disagree on whether Bloom fled the scene or simply walked away, but either way Bloom's exit from the house occurred before Fye and Miller knew there was an arrest warrant out for Bloom and was not such that it created an emergency or caused a hot pursuit. The officers had no reason to believe a dangerous or violent situation was at hand and the arrest warrant for Bloom was relatively innocuous for unpaid fines levied for a history of misdemeanors. Given that Fye and Miller did not have a search warrant and the arrest warrant alone did not justify their entry into the home, Orndorf has made a plausible argument of a Fourth Amendment violation against Fye and Miller given that the necessary exigent circumstances did not exist.

**B. First Amendment Retaliation Against Fye and Miller**

Given the Court's conclusion that there was no probable cause for entry into Orndorf's home the Court next considers whether the actions Fye and Miller took in threatening to arrest her, entering her home, and filing charges against her amount to retaliation. Orndorf contends that she

was engaged in protected free speech when asking the officers for the search and arrest warrants. ECF No. 1, p. 10.

In order to establish a First Amendment retaliation claim, a plaintiff must prove (1) that [s/]he engaged in constitutionally protected activity; (2) that the government responded with retaliation sufficient to deter a person of ordinary firmness from exercising his/her constitutional rights; and (3) that the protected activity caused the retaliation. *See Muhammad ex rel. J.S. v. Abington Twp. Police Dep't*, 37 F. Supp. 3d 746, 760 (E.D. Pa. 2014) *(*citing *George v. Rehiel,* 738 F.3d 562, 585 (3d Cir.2013). In this case, Orndorf engaged in protected activity by asserting her rights and demanding a warrant before officers entered her home. The officers pushed open the door and entered the residence and threatened to arrest her. It is plausible that causation exists because Orndorf's asking for the search warrant may have provoked Clark to push open the door and threaten to arrest her. The issue is whether entering the home and threatening Orndorf was sufficient to deter a person of ordinary firmness from exercising her constitutional rights.

The Courts have established that threats are not enough to support a retaliation claim. Third Circuit, as well as courts in this District and nearby districts, consistently hold that verbal threats or taunts, without more, are not averse enough to violate the Constitution. *See Chruby v. Kowaleski*, 534 Fed.Appx. 156, 161 (3d Cir. 2013). As to the adverse action of entering the home without a search warrant, the Court concluded above that the officers lacked sufficient probable cause for entering the home.

> Although a *Bivens* (or 42 U.S.C. § 1983) plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury in any retaliation action, the need to demonstrate causation in the retaliatory-prosecution context presents an additional difficulty which can be overcome by a showing of the absence of probable cause.

*Hartman v. Moore*, 547 U.S. 250, 251 (2006).

The facts demonstrate that Fye and Miller knew that there was an arrest warrant for Bloom and they knew Bloom was inside Orndorf's residence.  But they lacked the probable cause or the exigent circumstances needed to enter the home to arrest Bloom.  As such Orndorf has presented a plausible First Amendment retaliation claim against Fye and Miller for entering her home without a warrant and for filing charges against her.

### C. Malicious Prosecution against Fye[5]

#### a. Federal

Orndorf alleges that Fye initiated criminal proceedings against her without probable cause and therefore, engaged in malicious prosecution.  "A plaintiff in a retaliatory-prosecution action must plead and show the absence of probable cause for pressing the underlying criminal charges." *Hartman v. Moore*, 547 U.S. 250, 250 (2006).  As a general matter, this Court has held that the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out.  *See Crawford–El v. Britton*, 523 U.S. 574, 592 (1998).

A federal malicious prosecution claim requires "a plaintiff must demonstrate that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for the purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (citation omitted).

---

[5] Count III of the Complaint alleges the 42 U.S.C. § 1983 claim against Fye only.  Count V claims state law malicious prosecution against individual defendants.  The Police Criminal Complaint (ECF No. 17-1) is signed by Cpl. Shawn M. Fye.

The Court understands that Orndorf was charged with hindering apprehension or prosecution-harboring or concealing under 18 Pa.C.S. 5105(a)(1) and disorderly conduct under 18 Pa.C.S. 5503(a)(4). ECF No. 17-1, p. 4 (Police Criminal Complaint). There is no issue of fact that criminal proceedings were initiated against Orndorf and that the charges were later dismissed. The Court also acknowledges that Orndorf may have suffered a deprivation of liberty as a result of the charges. Yet given the narrative in the Criminal Complaint and the testimony by the officers at the Omnibus Pre-Trial Motion (ECF No. 14-2), the charge of hindering apprehension or prosecution is justified with probable cause for prosecution. The Criminal Complaint reads as follows:

> The Actor, Orndorf, on or about 02/23/20, in the County of Clearfield, commits an offense if, with the intent to hinder the apprehension, prosecution, conviction or punishment of another for crime or violation of the terms of probation, parole, intermediate punishment or accelerated rehabilitative disposition, he: (1) harbors or conceals the other, …, in violation of Section 5105(A)(1)….

> Orndorf was told that Michael Bloom had warrants for his arrest and that if he returned she was to call the police. She was also advised that she could be arrested if she harbored Bloom or hindered his arrest. Police saw Bloom back in the residence with Orndforf when Orndorf was confronted about Bloom she stated that he left knowing that he did not. Orndorf also locked the door on police when she claimed that she was going to get him. Orndorf also attempted to close the door on police and hold the door shut when police were making entry to arrest Bloom. ECF No. 17-1, p. 4 (Hindering Apprehension)

> The Actor, Orndorf, on or about 02/23/20, in the County of Clearfield, is guilty of disorderly conduct if, with the intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor, … in violation of Section 5503(A)(4)…

> Orndorf attempted to hold the front door shut on police while police were attempting to enter to arrest Bloom on a warrant. ECF No. 17-1, p. 4 (Disorderly Conduct)

An excerpt from Miller's testimony is as follows:

A:  She was already informed we had a warrant [for Bloom's arrest].  I informed her, again, he had a warrant and we observed him inside the residence. ...
Q:  What did you say - - so you knock, does [Orndorf] open the door, or is she talking through the door; how does that happen?
A:  She opened the door...
Q:  And you say [Orndorf] pushed the door, closed the door, what happened?
A:  Yes.  We were right in front of the doorway, we were trying to talk to her, and she tried to slam the door closed on us so we kind of stopped the door and made entry.  ECF No. 14-2, pp. 53-55.

Based on the information of record, the Court finds that there was probable cause for the hindering apprehension charge because Orndorf knew there was a warrant out for Bloom's arrest and she was warned that she would be subject to arrest if Bloom returned to the house, and still, she did not notify the officers.  She acted as an obstacle to arresting Bloom.  As to the disorderly conduct charge the Court finds there was no probable cause because at all relevant times she was inside her own residence and did not affect the public commensurate with the disorderly conduct charge.   As such Orndorf has presented a plausible claim for malicious prosecution as it relates to the disorderly conduct claim.

### b.  State

A Pennsylvania malicious prosecution claim requires the plaintiff to show that the defendants "instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." *Kelley v. Gen. Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988).  As above stated, the Court finds that there was probable cause to press charges against Orndorf as to the hindering apprehension charge but not the disorderly conduct charge.  The state-law malicious prosecution claim shall only proceed as it relates to the disorderly conduct claim.

### D.  Intentional Infliction of Emotional Distress against Fye and Miller.

14

Orndorf claims that Fye and Miller intentionally caused her emotional distress by threatening her with unjustified arrest, forcing their way into her home, and later filing criminal charges against her. Moving Defendants retort that only the most egregious conduct is an adequate basis for IIED claim and that probable cause for an officer's action will negate such conduct as egregious. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010); ECF No. 14, p. 14.

The four elements Plaintiff must show to establish an IIED claim are: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Jordan v. Pennsylvania State Univ.*, 276 A.3d 751, 775 (2022), *reargument denied* (July 13, 2022), *appeal denied*, No. 410 MAL 2022, 2023 WL 3069525 (Pa. Apr. 25, 2023) (citing *Madreperla v. Williard Co.*, 606 F.Supp. 874, 879-80 (E.D. Pa. 1985); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979)).

The Court is able to determine that all elements of the claim are satisfied here. Pushing into someone's home and threating one with arrest is intentional extreme behavior that could cause severe emotional distress. As we have determined above, the Court does not find that probable cause existed for entry into Orndorf's home; there was a warrant out for Bloom's arrest for fines levied for misdemeanors and no exigent circumstances existed. The Court further determined that the criminal charge of disorderly conduct also lacked probable cause. The result of the Court's findings of a lack of probable cause make Orndorf's claim of IIED a plausible claim because there is no probable cause to negate the elements of IIED.

### E. *Monell* Failure to Train against Clearfield

15

Orndorf contends that Clearfield failed to adequately train its officers how to properly conduct searches and arrests inside a home. Moving Defendants assert this claim fails because Orndorf failed to adequately allege the underlying Fourth Amendment violation. In the alternative Moving Defendants allege that a *Monell* claim only allows Clearfield to be sued under Section 1983 for acts implementing an official policy, practice, or custom of Clearfield. *See Losch v. Borough of Parkesburg, Pa.*, 736 F.2d 903, 910 (3d Cir. 1984).

> [T]he language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

Orndorf has not presented any Clearfield policy that would support such a claim that its policy, practice, or custom caused her injury. Instead, she alleges that the *lack of training* in policy, practice, or custom has led to her injury. The law states that "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). To demonstrate deliberate indifference a pattern of certain actions by officers must be established and brought to the attention of the local government. *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011). Moving Defendants assert that there is no pattern of Fourth Amendment violations sufficient to place Clearfield on notice that its training of its police officers was deficient for searches and arrests inside the home. ECF No. 14, p. 24. Orndorf retorts that "such arrests are an inevitable and a regular part of routine police work" thereby stating that arrest situations are likely frequent and are likely setting a pattern and putting Clearfield on notice. ECF No. 1, ¶¶ 49-52. Moving Defendants say that Orndorf over generalizes

arrests. ECF No.14, p. 24. The Court agrees with Orndorf that arrests inside a residence are highly predictable.

> [T]he possibility that a plaintiff might succeed in carrying a failure-to-train claim without showing a pattern of constitutional violations, we simply hypothesized that, in a narrow range of circumstances, a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations. The likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights could justify a finding that policymakers' decision not to train the officer reflected "deliberate indifference" to the obvious consequence of the policymakers' choice.

*Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)(citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 408-09 (1997)). The Court finds that Orndorf has again presented a plausible claim. While Orndorf has not shown a pattern of unlawful searches in the pursuit of fulfillment of an arrest warrant, it is not unreasonable to assume that an arrestee would seek shelter or cover in a residence and officers should be trained on how to legally arrest a person who sought such refuge, without violating any constitutional rights. Indeed, as explained in the Courts discussion at Section (II.A) there is a process of thought that must occur that considers many factors before entry into a home without a warrant. Thus, Orndorf has presented a plausible *Monell* claim against Clearfield.

**F. Qualified Immunity for Fye and Miller**

Moving Defendants assert that Fye and Miller are entitled to qualified immunity as to the federal claims under Section 1983 unless the plaintiff shows that the officer violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). This doctrine protects public officials "from undue interference with their

17

duties and from potentially disabling threats of liability." *Wright v. City of Philadelphia*, 409 F.3d

595, 599 (3d Cir. 2005) (citations omitted).  In *Saucier,* the Supreme Court provided a sequential

two-step inquiry for analyzing a defense of qualified immunity:

> First, a court must decide whether the facts that a plaintiff has alleged or shown
> make out a violation of a constitutional right. Second, if the plaintiff has
> satisfied this first step, the court must decide whether the right at issue was
> clearly    established    at    the    time    of    a    defendant's    alleged
> misconduct.  Qualified immunity is applicable unless the official's conduct
> violated a clearly established constitutional right.

*Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001))

(internal citations and quotations omitted). Recently, however, the Supreme Court has eliminated

the requirement that *Saucier*'s two steps be analyzed in sequential order:

> On reconsidering the procedure required in *Saucier,* we conclude that, while the
> sequence set forth there is often appropriate, it should no longer be regarded as
> mandatory. The judges of the district courts and the courts of appeals should be
> permitted to exercise their sound discretion in deciding which of the two prongs
> of the qualified immunity analysis should be addressed first in light of the
> circumstances in the particular case at hand.

*Pearson* 555 U.S. at 236.

1. **Warrantless Search**

The Court first finds that a claimed right is clearly established.  Orndorf has a right to

privacy in her own house under the Fourth Amendment.  The second step requires the Court to

determine whether Orndorf's right was clearly established at the time of the alleged misconduct.

Did Officers Fye and Miller know Orndorf had a right to privacy in her home when they entered

it without a search warrant but pursuant to an arrest warrant?  The Court cannot make such a

determination at this time.  It is fairly certain that Fye and Miller understood that they cannot gain

entrance into a private home without consent or a warrant.  As Orndorf states, this law has existed

since 1981.  It is uncertain, however, whether it was reasonable for the officers to believe that the

supporting probable cause for the arrest warrant allowed them to gain access to the house. In other words, did Fye and Miller reasonably believe that the probable cause established for the arrest warrant or exigent circumstances existed to allow them to enter the home to make the arrest. It stands to reason that the uncertainty of the reasonableness of Fye and Miller's entry into Orndorf's home prohibits Qualified Immunity as a defense to the Fourth and First Amendment claims.

### 2. Malicious Prosecution

As for the Section 1983 malicious prosecution claim that remains, disorderly conduct, the parties mistakenly focus on whether Orndorf was "deprived of liberty" which is an issue of fact for later consideration. The issue here is whether Fye and Miller were reasonably aware of Orndorf's constitutional rights in the context of filing a criminal complaint. The Fourth Amendment of the U.S. Constitution ensures "[t]he right of the people to be secure in their persons…against unreasonable searches and seizures..." The Court finds that as officers of the law Fye and Miller knew that filing a criminal complaint, without probable cause, would violate a person's civil rights. Qualified immunity fails as a defense for Fye and Miller as to malicious prosecution and the retaliation claim as it relates to the criminal charges against Orndorf.

## IV.   Conclusion

For the reasons stated above, Moving Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part as follows:

- The Motion to Dismiss as to the Fourth Amendment claim is DENIED;
- The Motion to Dismiss as to the First Amendment claim is DENIED;
- The Motion to Dismiss as to the claims of Malicious Prosecution is GRANTED in part and DENIED in part. The motion is granted as to hindering apprehension charge but denied as to the disorderly conduct charge;

- The Motion to Dismiss as to the Intentional Infliction of Emotional Distress claim is DENIED; and

- The Motion to Dismiss the *Monell* claim for failure to train is DENIED.

An appropriate Order will be entered.

Dated: June 15, 2023

Stephanie L. Haines
United States District Court Judge